**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| AIR ALLIANCE HOUSTON, et al., | |
| *Petitioners*, | |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, and LEE ZELDIN, Administrator, U.S. Environmental Protection Agency, | Case No. 25-1143 |
| *Respondents*. | |

**UNOPPOSED MOTION OF TALEN MONTANA, LLC FOR LEAVE TO
INTERVENE ON BEHALF OF RESPONDENTS**

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27, and Rule 15(b) and 27 of this Court, Talen Montana, LLC ("Talen Montana") hereby respectfully moves to intervene in support of Respondents United States Environmental Protection Agency and Administrator Lee Zeldin (collectively, "Federal Respondents"), in the petition for review filed by Air Alliance Houston, Center for Biological Diversity, Citizens for Pennsylvania's Future, Clean Air Council, Dakota Resource Council, Downwinders at Risk, Environmental Defense Fund, Environmental Integrity Project, Environmental Law & Policy Center, Montana Environmental Information Center, Natural Resources Defense Council, Inc., and Sierra Club (collectively, "Petitioners"). The petition seeks review of

1

EPA's publication of the "Annex I Stationary Sources List," ("Stationary Sources List") by EPA on August 14, 2025, at https://www.epa.gov/system/files/documents/2025-04/regulatory-relief-for-certain-stationary-annex-1.pdf and in the *Federal Register*, 90 Fed. Reg. 16777, 16779–84 (Annex I) (April 21, 2025). This challenge directly concerns Talen Montana as it is the operator and part-owner of the Colstrip power plant, which is on the Stationary Sources List that is the subject of this challenge. Talen Montana thereby has a substantial interest in the outcome and seeks to intervene to protect its interest. Counsel for Talen Montana contacted counsel for Petitioners and counsel for Federal Respondents to request their positions on this motion. Petitioners and Federal Respondents do not oppose the relief sought by this motion.

## INTRODUCTION

Talen Montana is the operator and part-owner of Units 3 & 4 of the Colstrip Steam Electric Station ("Colstrip"), one of the power plants that was granted a Clean Air Act Section 112(i)(4) exemption by President Donald J. Trump (the "Presidential Exemption") and included on the Stationary Sources List, which provides the list of specific sources subject to the Presidential Exemption. Petitioners challenge EPA's publication of the Stationary Sources List, which identifies Colstrip as currently exempted from compliance with an emission requirement set in a regulation promulgated under Section 112 of the Clean Air Act for up to two years.

Colstrip is the most affected facility under the regulation.  To comply with the regulation, Colstrip's owners, including Talen Montana, would need to spend more than $500 million to install pollution control equipment known as baghouses to control particulate matter emissions by the rule's compliance deadline of July 6, 2027.  Barring that expenditure, under the current regulation, Colstrip would need to shut down.  Colstrip is critical to electric reliability in the region and to Montana's economy.  Meeting the current regulation's deadline would require substantial and immediate expenditures by Colstrip's owners, including Talen Montana, for final design and construction of the equipment.  In reliance on the Presidential Exemption, Colstrip has currently suspended those activities.

Petitioners' action therefore not only implicates, but threatens to impair the legal protection currently provided to Talen Montana and Colstrip.  Granting Talen Montana's motion to intervene is therefore appropriate.

## BACKGROUND

In 2024, EPA finalized the rule titled *National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Units Review of the Residual Risk and Technology Review*, 89 Fed. Reg. 38508 (May 7, 2024), in which EPA amended a set of regulations commonly referred to as the Mercury and Air Toxics Standards, or "MATS" ("2024 MATS Rule" or "Rule").  Under the Rule, Colstrip must install new emission control technology to comply

3

with the revised emission standard by July 6, 2027.  40 C.F.R. § 63.991 (discussing compliance deadline); *see also* 89 Fed. Reg. at 38564 (same).

During the rulemaking process, Talen Montana, operator and part-owner of Colstrip, submitted comments explaining why the proposed rule was not legally permissible and how the proposed rule would disproportionately impact Colstrip. In its comments, Talen Montana requested that EPA either provide Colstrip with regulatory relief or not finalize the proposed rule.  Talen Montana (along with other petitioners) challenged the Rule once it was finalized by EPA.  *North Dakota v. EPA*, No. 24-1119 (D.C. Cir.) (lead case); *Talen Montana, LLC v. EPA*, No. 24-1190 (D.C. Cir.).

Under the new presidential administration, EPA announced on March 12, 2025, that the President "is considering a 2-year compliance exemption via Section 112(i)(4) of the Clean Air Act" for facilities subject to certain "National Emission Standards for Hazardous Air Pollutants," such as the 2024 MATS Rule.  *See* EPA, *Trump EPA Announces Reconsideration of Air Rules Regulating American Energy, Manufacturing, Chemical Sectors (NESHAPs)* (Mar. 12, 2025);[1] *see also* 42 U.S.C. § 7412(i)(4).  EPA subsequently announced that the Agency is "allow[ing] the regulated community to request a Presidential Exemption under section 112(i)(4) of

---

[1]    Available    at    https://www.epa.gov/newsreleases/trump-epa-announces-reconsideration-air-rules-regulating-american-energy-manufacturing.

the Clean Air Act." *See* EPA, *Clean Air Act Section 112 Presidential Exemption Information*.[2]    Talen Montana, along with NorthWestern Corporation d/b/a NorthWestern Energy ("NorthWestern") (another Colstrip Owner), submitted its presidential exemption request for Colstrip on March 28, 2025 (attached as Exhibit 1).

In its request, Talen Montana and NorthWestern provided site-specific information on why (1) "the technology to implement" the 2024 MATS Rule is "not available" and (2) "it is in the national security interests of the United States" to grant the exemption to Colstrip.  *See* 42 U.S.C. § 7412(i)(4) ("The President may exempt any stationary source from compliance with any standard or limitation . . . if the President determines that the technology to implement such standard is not available and that it is in the national security interests of the United States to do so."); EPA, *Clean Air Act Section 112 Presidential Exemption Information* ("Submitting a request does not entitle the submitter to an exemption.  The President will make a decision on the merits.").

On April 8, 2025, President Trump issued a proclamation titled *Regulatory Relief for Certain Stationary Sources to Promote American Energy*, 90 Fed. Reg. 16777 (Apr. 21, 2025).  The Presidential Exemption exempted certain stationary

---

[2] Available at https://www.epa.gov/stationary-sources-air-pollution/clean-air-act-section-112-presidential-exemption-information.

sources subject to the 2024 MATS Rule "as identified in Annex I of this proclamation." *Id.* Pursuant to Clean Air Act Section 112(i)(4), the Presidential Exemption granted a two-year compliance extension to Colstrip for the 2024 MATS Rule. *Id.* at 16780 (Annex 1). The President determined that "[t]he technology to implement the Rule is not available" and "[i]t is in the national security interests of the United States to issue this Exemption." *Id.* at 16777.

Petitioners now challenge EPA's publication of the Stationary Sources List that was published as Annex I to the Presidential Exemption. According to their Statement of Issues, they challenge EPA's publication of the Stationary Sources List as arbitrary, capricious, contrary to law, or *ultra vires*. Petitioners are also concurrently challenging the Presidential Exemption in the District of Columbia District Court in a suit against Federal Respondents and President Donald J. Trump, where Petitioners seek to declare the Presidential Exemption unlawful and invalid and find that the deadlines of the 2024 MATS Rule remain as promulgated. *See Air Alliance Houston v. Trump*, No. 1:25-cv-01852 (D.D.C.).

Talen Montana has already made operational planning and compliance decisions in reliance on the Presidential Exemption. If the Court issues an unfavorable ruling regarding the Stationary Sources List, Talen Montana may face substantial and immediate compliance burdens and capital costs associated with the

2024 MATS Rule that would threaten Colstrip's continued viability and directly impair Talen Montana's legally protected interests.

## ARGUMENT

Talen Montana has substantial interest in defending all aspects of the Presidential Exemption, including its listing on Annex 1, as an unfavorable court decision in this matter may reimpose requirements on Colstrip, which faces the most burden under the 2024 MATS Rule. *See, e.g.*, 89 Fed. Reg. at 38522 (stating "only two [units] at one facility (Colstrip)" are expected to require installing the "costliest" control technology under the Rule).

Federal Rule of Appellate Procedure 15(d) permits a party to intervene in a proceeding to review agency action if a motion to intervene is "filed within 30 days after the petition for review is filed" and "contain[s] a concise statement of the interest of the moving party and the grounds for intervention." Fed. R. App. P. 15(d). Because Rule 15(d) offers no additional standards for intervention, Federal Rule of Civil Procedure 24 may inform the intervention inquiry. *See Int'l Union, United Auto. Workers v. Scofield*, 382 U.S. 205, 216–17 n.10 (1965); *see also, e.g., Amalgamated Transit Union Int'l v. Donovan*, 771 F.2d 1551, 1553 n.3 (D.C. Cir. 1985) (per curiam); *Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997).

To intervene as of right under Federal Rule of Civil Procedure 24(a), "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir.1998)). As explained below, Talen Montana has a direct and substantial interest in the outcome of this litigation that will not be adequately protected by the existing parties, and intervention at this time would not prejudice the parties. Accordingly, intervention on behalf of Federal Respondents is warranted.

## I.      Talen Meets the Standard for Intervention as a Matter of Right

### A.      The Court Has Discretion to Allow Intervention After the 30-Day Period, and Talen Montana's Motion is Otherwise Timely.

The timeliness inquiry for intervention motions under Federal Rule of Civil Procedure 24(a) is governed by a flexible standard, not a rule. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("The timeliness of a motion to intervene is to be judged in consideration of all the circumstances.") (internal quotation marks and citation omitted). Because this Court does "not require[] timeliness for its own sake," the amount of "time elapsed" is not the "determinative test." *Id.* Instead, the inquiry focuses on the underlying purposes of the timeliness requirement, which "is aimed primarily at preventing potential intervenors from

unduly disrupting litigation[] to the unfair detriment of the existing parties." *Id.* Although intervention within 30 days of a petition for review's filing will automatically be considered timely, Fed. R. App. P. 15(d), failing to do so is not dispositive. "For good cause, the court may extend the time prescribed by these rules" except in prescribed circumstances, none of which involves motions to intervene. Fed. R. App. P. 26(b).

Talen Montana's intervention would not prejudice the existing parties or otherwise disrupt the litigation. Petitioners filed their Petition for Review on June 12, 2025, and their Statement of Issues on July 14, 2025. Currently, these are the only substantive filings in this case, which confirms that minimal time has lapsed since the inception of this action, and that Talen Montana's intervention will not prejudice the existing parties. *See U.S. v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980) (timeliness inquiry should "especially weigh[] the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case."); *see, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (finding intervention motion was timely when filed less than two months after initial filing); *Akiachak Native Cmty, v. U.S. Dep't of the Interior*, 584 F. Supp. 2d 1, 5 (D.D.C. 2008) (finding no prejudice to existing parties where intervenor applicants filed their

9

motion on the same day defendants filed a responsive pleading and before any dispositive motions were filed). Additionally, the Court has already granted an extension of time for initial submissions and dispositive motions for Respondent until September 26, 2025.

Talen Montana has moved expeditiously to preserve its right to intervene in both the District of Columbia District Court and D.C. Circuit litigation. Shortly after Federal Defendants entered an appearance in the District Court, counsel for Talen Montana contacted counsel for Federal Defendants regarding Talen Montana's intent to intervene in the District Court case. Counsel for Talen Montana made this initial communication to Federal Defendants on July 30, 2025. The following day, July 31, counsel for Talen Montana and counsel for Federal Defendants had a phone conference. During that conference, counsel for Talen Montana was first informed that there was a companion case in the D.C. Circuit. Talen Montana was previously unaware of the instant case, as Talen Montana was not served with the petition for review nor made aware of it by Petitioners, and the press releases by Petitioners (which had originally brought Talen Montana's attention to the District Court suit) made no mention of a companion suit in the D.C. Circuit.[3]

---

[3] *See* Environmental Defense Fund, *12 Groups File Lawsuit Challenging Unlawful Exemptions Allowing Coal Plants to Sidestep Mercury and Arsenic Limits* (June 12, 2025), available at https://www.edf.org/media/12-groups-file-lawsuit-challenging-unlawful-exemptions-allowing-coal-plants-sidestep-mercury; Earthjustice, *Trump Gave OK for 68 Coal Plants to Ignore Clean Air Act Standards via Email* (June 12,

The next day, August 1, 2025, counsel for Talen Montana reached out to Petitioners to seek their positions on Talen Montana's intervention in both cases, asking for responses by Wednesday, August 6.  Thus, immediately after becoming aware of the instant suit and the potential impact on its interests, Talen Montana undertook efforts to protect those interests.  Talen Montana is now promptly moving to intervene in this challenge within one week of learning of its existence.  For good cause shown, Talen Montana respectfully requests the Court to grant it intervenor status to protect its vital and unique interests, which depend on the continued viability of the Presidential Exemption as it applies to Talen Montana.

## B.     Talen Montana Has a Legally Protectable Interest Relating to the Subject of This Action.

To qualify for intervention as of right, an applicant must show "an interest relating to . . . the subject of the action."  Fed. R. Civ. P. 24(a)(2).  This requirement is satisfied by demonstrating that a "legally protectable" interest is at stake.  *Defs. of Wildlife v. Jackson*, 284 F.R.D. 1, 6 (D.D.C. 2012), *aff'd in part, appeal dismissed in part sub nom. Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013).  "A legally protectable interest is of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."  *Id.* (internal quotation marks and citation omitted).

---

2025),     https://earthjustice.org/press/2025/trump-gave-ok-for-68-coal-plants-to-ignore-clean-air-act-standards-via-email.

Talen Montana has a legally protectable interest related to the subject of this action: the regulatory relief granted by the Presidential Exemption. Talen Montana applied for an exemption from compliance with the 2024 MATS Rule for Colstrip for two years. The President granted this exemption, as evidenced by the inclusion of Colstrip on the Stationary Sources List. If Petitioners persuade this Court to issue an unfavorable ruling regarding the Stationary Sources List exempted by the Presidential Exemption, as part owner and operator of Colstrip, Talen Montana could be immediately subject to the 2024 MATS Rule compliance obligations and deadlines.

Reimposing the 2024 MATS Rule would place instantaneous and severe operational and financial burdens on Colstrip and Talen Montana and would risk the continued viability of Colstrip. The 2024 MATS Rule placed enormous and disproportionate compliance obligations on Colstrip. Indeed, when EPA finalized the Rule, the Agency acknowledged that almost half of the regulatory burdens will fall on Colstrip alone. *See, e.g.*, 89 Fed. Reg. at 38533 ("42 percent"); EPA, Response to Comments on the 2024 MATS Rule, at 39 (Apr. 2024) (discussing how "tens of millions of dollars on annual compliance costs will fall disproportionately on . . . Colstrip in particular"). (attached as Exhibit 2).

In challenging the 2024 MATS Rule, Talen Montana submitted a declaration stating that, at the time the challenge was filed, it would have cost "over $350

million" to install the control technology needed to comply with the Rule. Decl. of Dale E. Lebsack ¶ 34, *Talen Montana, LLC v. EPA*, No. 24-1190 (D.C. Cir. June 27, 2024), ECF No. 2062093. As stated in Talen Montana's exemption request, these costs have only increased and are now estimated to exceed $500 million. Exhibit 1 at 6. Therefore, Talen Montana's interests in retaining the Presidential Exemption—and limiting the burdens that threaten the future operation and financial viability of Colstrip—constitute a legally protectable interest. *See, e.g., Dimond v. District of Columbia*, 792 F.2d 179, 182 (D.C. Cir. 1986) (finding insurance company's reliance on expected savings from statutory limits on car accident victims' recoveries a sufficient interest in challenge to the limits).

## C. The Disposition of This Case May Impair or Impede Talen Montana's Ability to Protect Its Interests.

In determining whether the disposition of an action may as a practical matter impede or impair a proposed intervenor's ability to protect its interests, the court "look[s] to the practical consequences of denying intervention, even where the possibility of future challenge to the regulation remain[s] available." *See Fund for Animals*, 322 F.3d at 735 (internal quotations marks omitted). This requirement is met when "reestablishing the status quo" would "be difficult and burdensome." *Id.* Importantly, "it is not enough to deny intervention under [Federal Rule of Civil Procedure] 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation. This court . . . stated that, especially in

administrative law cases, questions of 'convenience' are clearly relevant." *NRDC v. Costle*, 561 F.2d 904, 910 (D.C. Cir. 1977) (citing *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

Talen Montana meets this requirement because "the practical consequence of denying intervention would be to deprive [Talen Montana] of an opportunity to raise arguments and defenses" supporting the Presidential Exemption to protect Talen Montana's vital interests. *See Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010). Moreover, an unfavorable ruling in this case may alter the status quo by subjecting the company to "undue adverse regulations." *See Farmer v. EPA*, 759 F. Supp. 3d 101, 110 (D.D.C. 2024).

This challenge, if it survives motions to dismiss, may determine the legitimacy of the Stationary Sources List subject to the Presidential Exemption, and thus presents a crucial opportunity for Talen Montana to raise arguments necessary to fully protect its interests. A finding that would invalidate the Presidential Exemption as it relates to Talen Montana, or that the original compliance date applies, would severely impact Talen Montana's interests that it seeks to protect in this litigation. If this Court were to issue an unfavorable decision regarding the Stationary Sources List, it may be difficult to reestablish the status quo and would at the very least result in the expenditure of significant unnecessary resources and cause immense regulatory uncertainty for Talen Montana and Colstrip. *Cf. Cty. of San Miguel, Colo.*

*v. MacDonald*, 244 F.R.D. 36, 47 (D.D.C. 2007) (finding impairment because "the intervenor-applicants would have to file a separate action" upon an unfavorable decision, and "the imminent threat of lost earnings . . . would immediately impair the intervenor-applicants[]").

### D.    Talen Montana's Interests Are Not Adequately Represented by the Existing Parties.

Talen Montana's interests are not adequately represented by the Petitioners or EPA.  "[P]artial congruence of interests . . . does not guarantee the adequacy of representation." *Fund For Animals*, 322 F.3d at 737.  Recognizing this, the D.C. Circuit has "often concluded that governmental entities do not adequately represent interests of aspiring intervenors." *Id.* at 736; *see, e.g., NRDC*, 561 F.2d at 912–13 (allowing regulated companies to intervene in support of EPA because their interest "is more narrow and focused than EPA's" and, "[g]iven the acknowledged impact that regulation can be expected to have upon their operations, [the companies'] participation in defense of EPA decisions that accord with their interest may also be likely to serve as a vigorous and helpful supplement to EPA's defense").

It is well established in this Circuit that government agencies defending their regulations or other actions will not adequately represent the interests of the regulated community even when aligned interests exist. *See, e.g., Dimond*, 792 F.2d at 192–93 (finding insurance company to not be sufficiently represented by the government defendant because the company had narrower financial interests in

defending the challenged law, whereas the government represented the broader public interest). "The applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Id.* at 192 (citations omitted). The burden of making this showing is thus "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *NRDC*, 561 F.2d at 911–12 ("Even when the interests of EPA and [the intervention applicant] can be expected to coincide, such as on the exclusion of a specific pollutant from regulation, that does not necessarily mean that adequacy of representation is ensured for purposes of Rule 24(a)(2)." (footnote omitted)).

Applying the above precedents to this case, the Federal Respondents cannot adequately represent Talen Montana's interests in defending the Presidential Exemption as applied to Colstrip. To start, unlike Talen Montana, the Federal Respondents would suffer no regulatory burden or economic harm in the event of an unfavorable outcome in this challenge. This alone generates divergent incentives when approaching the lawsuit. *Cf. Fund for Animals*, 322 F.3d at 736 ("taking the [intervenor applicant's] efforts 'into account' does not mean giving them the kind of primacy that the [applicant] would give them."); *Fowler v. EPA*, No. CIV.A. 09-005 CKK, 2009 WL 8634683, at *4 (D.D.C. Sept. 29, 2009) (finding this element satisfied because applicants had economic and operational concerns not obviously shared by EPA).

Moreover, the Federal Respondents' interests involve broad policy concerns, such as protecting agency powers. These concerns may also be subject to change depending on different administrations and their priorities. By contrast, Talen Montana is steadily and specifically focused on the effects of the Presidential Exemption (and this litigation) as it pertains to Colstrip, and Colstrip alone. *See, e.g.*, *Dimond*, 792 F.2d at 192–93 (discussing company's "'parochial' financial interest not shared by the citizens"); *Fund for Animals*, 322 F.3d at 736 n.9 (providing various examples of divergent interests between the government and intervenor applicant).

In sum, Talen Montana's "interest is more narrow and focused . . . , being concerned primarily with the regulation that affects [Colstrip]." *NRDC*, 561 F.2d at 912. Talen Montana's intervention is needed "to serve as a vigorous and helpful supplement," especially to answer "questions of very technical detail and data; on the basis of [its own] experience," to "contribute to the informed resolutions" to which only Talen Montana can present and raise. *See id.* at 912–13. Existing parties are therefore incapable of adequately representing Talen Montana's unique interests.

### E.    Talen Montana Has Article III Standing.

Article III standing exists when there is an "injury in fact," or invasion of a legally protected interest, that is causally connected to the conduct at issue and is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S.

555, 560–61 (1992).  An impending threat of injury constitutes a sufficient injury for purposes of standing.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

"[I]ntervenors that seek the same relief sought by at least one existing party" need not establish Article III standing, whereas those "seeking relief broader than or different from that sought by existing parties" must.  *Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. July 1, 2025) (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020); *Town of Chester, NY v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017)).  Talen Montana seeks the same relief sought by the Federal Respondents: retaining the Presidential Exemption.  At the same time, this Court may still require all intervenor applicants to demonstrate standing under this Circuit's precedent under *Yocha Dehe v. Department of the Interior*, 3 F.4th 427, 430–32 (D.C. Cir. 2021).  *Farmer*, 759 F. Supp. 3d at 107 n.2 (discussing tension between *Little Sisters of the Poor* and *Yocha Dehe*); *Institutional S'holder Servs.*, 142 F.4th 757 at 764 n.3 (acknowledging but declining to resolve the tension).

Regardless, Talen Montana has standing.  Petitioners' challenge causes an impending threat of injury to the company's legally protectable interest, *i.e.*, the Presidential Exemption and the protections guaranteed by it from the 2024 MATS

18

Rule. This threat would be redressed by a court decision favorable to Talen Montana.

Because there is "little question" that "an object of the [executive] action (or forgone action) at issue" has suffered an injury in fact "and that a judgment preventing or requiring the action will redress it," Talen Montana has Article III standing. *See Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2134 (2025) (quoting *Lujan*, 504 U.S. at 561–62); *see also Fund for Animals*, 322 F.3d at 733 (finding the threatened loss of tourist dollars and a consequent reduction in funding for a conservation program sufficient to support standing to intervene in support of challenged agency action); *Military Toxics Project v. EPA*, 146 F.3d 948, 952–53 (D.C. Cir. 1998) (finding standing for proposed respondent-intervenor Chemical Manufacturers Association because challenged EPA rule governed disposal of materials produced by Association's members).

## CONCLUSION

For the foregoing reasons, Talen Montana respectfully requests that the Court grant its motion to intervene on behalf of Respondents.

DATED:    August 8, 2025                 Respectfully submitted,

*/s/ Joshua B. Frank*

Joshua B. Frank
BAKER BOTTS L.L.P.
700 K Street NW
Washington, D.C. 20001

Phone: (+1) 202-639-7748
Email: joshua.frank@bakerbotts.com

*Counsel for Talen Montana, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 27 and 32(g)(1), I hereby certify that the foregoing document complies (1) with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 4,213 words, excluding the caption and signature blocks, as counted by a word processing system, and (2) with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5)–(6) because it has been prepared using Microsoft Office Word for Office 365 and is set in Times New Roman font in a size equivalent to 14 points or larger.

DATED:    August 8, 2025                    Respectfully submitted,

                                            */s/ Joshua B. Frank*

                                            Joshua B. Frank

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Movant-Intervenor Talen Montana submits the following corporate disclosure statement.

Talen Montana, LLC is a power generation company, which operates and partially owns Colstrip Unit 3 (and has an economic interest in Colstrip Unit 4), which are power plant units affected by EPA's final action subject to this Petition for Review.  Talen Montana, LLC is an indirect, wholly owned subsidiary of Talen Energy Corporation.  Talen Energy Corporation is a publicly traded corporation.  No publicly held company owns more than 10% of Talen Energy Corporation's stock.

DATED:    August 8, 2025                Respectfully submitted,

                                        */s/ Joshua B. Frank*

                                        Joshua B. Frank

## CERTIFICATE OF PARTIES

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), I certify that the parties, intervenors, and amici in this case are:

Petitioners:  Air Alliance Houston, Center for Biological Diversity, Citizens for Pennsylvania's Future, Clean Air Council, Dakota Resource Council, Downwinders at Risk, Environmental Defense Fund, Environmental Integrity Project, Environmental Law & Policy Center, Montana Environmental Information Center, Natural Resources Defense Council, Inc., and Sierra Club.

Respondents:   United States Environmental Protection Agency and Lee Zeldin, Administrator, United States Environmental Protection Agency.

Intervenors and *Amici Curiae*: There are no intervenors or *amici curiae* in this case at the time of this filing.

DATED:    August 8, 2025                Respectfully submitted,

*/s/ Joshua B. Frank*

Joshua B. Frank

## CERTIFICATE OF SERVICE

I hereby certify that on this August 8, 2025, I electronically filed the foregoing document using the CM/ECF system.  Service was accomplished by the CM/ECF system.

DATED:    August 8, 2025                    Respectfully submitted,

*/s/ Joshua B. Frank*

Joshua B. Frank