**IN THE UNITED STATES COURT OF APPEALS FOR
THE DISTRICT OF COLUMBIA CIRCUIT**

---

|  |  |  |
|---|---|---|
| AIR ALLIANCE HOUSTON, et al., | ) | |
| | ) | |
| *Petitioners*, | ) | |
| | ) | |
| v. | ) | Case No. 25-1143 |
| | ) | |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY and LEE | ) | |
| ZELDIN, Administrator, U.S. | ) | |
| Environmental Protection Agency, | ) | |
| | ) | |
| *Respondents*. | ) | |

---

**PETITIONERS' RESPONSE IN OPPOSITION TO RESPONDENTS'
MOTION FOR SIX-MONTH ABEYANCE**

In April, President Trump gave nearly one-third of coal-fired power plants

across the country a free pass to cease their preparations to meet lower mercury

and air toxic emissions standards. EPA updated those standards, known as MATS,

just over a year ago. In doing so, EPA recognized that the vast majority of coal-

fired power plants were capable of and indeed already limiting their emissions of

these dangerous pollutants below what was required in its prior, 2012 standards.

Nevertheless, with a stroke of his pen, the President in his April 8, 2025

Proclamation exempted an unspecified list of facilities from their compliance

obligations through July 2029 by summarily asserting, without evidence or even a gesture at source-specific analysis, that "technology to implement" that Rule is "not available." Proclamation 10914 of April 8, 2025, 90 Fed. Reg. 16,777 (Apr. 21, 2025). That Proclamation was followed by EPA's publication of a list of the particular facilities to which the Proclamation would apply, which likewise offered no evidence or logic for those facilities' selection.

The President's assertion that the technology is unavailable is false.[1] And EPA's action to apply that declaration to particular facilities is unlawful. That unlawful action is having effects today. As prospective Respondent-Intervenor Talen Montana, LLC, confirms in its motion to intervene, coal plants have already suspended actions to reduce their emissions to comply with the updated standards. *See* Mot. to Intervene, ECF 2129297 at 6 (asserting that Talen Montana, operator of one of the exempted facilities, "has already made operational planning and compliance decisions in reliance on the Presidential Exemption"). Petitioners are entitled to pursue judicial review and seek judicial relief to minimize and prevent harm to Petitioners, their members, and the public from the unlawful exemptions effectuated by EPA.

---

[1] EPA admitted as much in its recent proposal to repeal the 2024 MATS Rule, writing that the Colstrip Power Plant in Colstrip, Montana, "was *the only* facility unable to meet the lower [filterable particulate matter] standard with *existing controls*." 90 Fed. Reg. 25,535, 25,541 (June 17, 2025) (emphasis added).

The six-month abeyance Respondents request, ECF 2128844 ("Abeyance Mot."), seeks to deprive Petitioners of that opportunity. While Petitioners have indicated to Respondents that they may be willing to consider abeyance of this petition in the event district court litigation concerning the Exemption Proclamation itself proceeds apace, *see Air Alliance Houston v. Trump*, Case No. 1:25-cv-1852-PLF (filed June 12, 2025), Respondents have not yet filed their responsive pleading in that matter, so it remains unknown which forum will take the lead on these questions. Plus, Respondents are seeking abeyance in that matter as well or, in the alternative, further delay of their answer deadline. *Id.*, ECF No. 26. A six-month abeyance of this petition—before any indication that Petitioners will be able to vindicate their rights in the district court litigation—would be patently premature.

Forcing this case into abeyance now, without a confirmed alternative forum, would thus impose substantial hardship on Petitioners and their members by depriving them of the emissions reductions that would flow from timely judicial review and timely industry compliance with the standards. Petitioners' and the public's interests in promptly achieving the health protections afforded by the updated MATS rule far outweigh the modest burden on Respondents to defend their actions. The *potential* future repeal of parts of that rule—which EPA proposes to accomplish through a separate action under separate statutory

authority—does not moot and should not delay review of the unlawful action EPA has already taken. The Court should deny Respondents' abeyance request.

## BACKGROUND

Coal plants are one of the largest domestic emitters of hazardous air pollutants like mercury, arsenic, nickel, and other toxic metals. *National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Units Review of the Residual Risk and Technology Review*, 89 Fed. Reg. 38,508, 38,509 (May 7, 2024) ("2024 Rule"). Short-term exposure to these pollutants can result in profound central nervous system effects; chronic exposure can cause brain and kidney damage, cancer, developmental effects, and a range of other adverse health effects. *Id.* at 38,556.

To address those risks, EPA first promulgated hazardous air pollutant standards for coal- and oil-fired power plants in 2012 under Section 112 of the Clean Air Act, 42 U.S.C. § 7412. After hazardous air pollutant emission standards are established, the Act requires EPA to review developments in control technologies to determine if revisions are necessary. *Id.* § 7412(d)(6).

As a result of its Section 7412(d)(6) review, EPA revised the MATS in 2024. The 2024 Rule set more protective limits on arsenic, nickel, and other metals pollution, represented by a surrogate "filterable particulate matter" standard (setting a new "fPM standard"), and further restricted mercury emissions from a

subset of plants using high-polluting lignite coal (the new "mercury standard"). 89 Fed. Reg. at 38,510. The 2024 Rule also required facilities to use continuous emissions monitoring rather than infrequent "stack testing" to demonstrate compliance with the new fPM standard (the "CEMS" requirement). *Id.* And it tightened standards for controlling pollution during plant startup periods. *Id.* EPA projected that the 2024 Rule would reduce annual emissions of mercury by 900 to 1,000 pounds and annual emissions of arsenic, nickel, and other toxic metals by about four to seven tons per year, starting in 2028. *Id.* at 38,561.

The 2024 Rule required coal plants to comply with the startup standard by January 2, 2025, and with the fPM standard, the mercury standard, and other requirements by July 6, 2027. *Id.* at 38,519, 38,564. The 2027 compliance deadline reflected EPA's assessment of the lead time necessary for the regulated coal plants to procure and install necessary emissions controls, upgrade controls, or optimize or dial up controls already installed, and to take other compliance steps that would allow them to meet the requisite standards. *Id.* at 38,519 ("The Agency believes this timeline is as expeditious as practicable considering the potential need for some sources to upgrade or replace pollution controls.").

Earlier this year, on what EPA touted as the "greatest day of deregulation our nation has seen," EPA announced it intended to "reconsider" the 2024 Rule.[2] At the same time, EPA invited coal plants to apply for a two-year Presidential exemption from compliance obligations. EPA subsequently took receipt of numerous such requests.

On April 8, 2025, President Trump issued a Proclamation titled *Regulatory Relief for Certain Stationary Sources to Promote American Energy*, later published in the Federal Register at 90 Fed. Reg. 16,777 (Apr. 21, 2025) ("Exemption Proclamation").[3] The Exemption Proclamation granted an unspecified list of coal plants exemptions from compliance with the 2024 Rule "for the period beginning July 8, 2027, and concluding July 8, 2029." Proclamation Announcement (referring to, but not publishing, an "Annex I" of exempt sources); *see* 90 Fed. Reg. 16,777. The list of exempt coal plants, known as Annex I, was not finalized

---

[2] EPA, News Release, *Trump EPA to Reconsider Biden-Harris MATS Regulation That Targeted Coal-Fired Power Plants to be Shut Down* (Mar. 12, 2025), https://www.epa.gov/newsreleases/trumpepa-reconsider-biden-harris-mats-regulation-targeted-coal-fired-power-plants-be; EPA, News Release, *EPA Launches Biggest Deregulatory Action in U.S. History* (Mar. 12, 2025), https://www.epa.gov/newsreleases/epa-launches-biggest-deregulatory-action-us-history.

[3] The Exemption Proclamation was published initially on the White House's website: https://www.whitehouse.gov/presidential-actions/2025/04/rregulatory-relief-for-certain-stationary-sources-to-promote-american-energy/ ("Proclamation Announcement").

until six days later, on April 14, 2025, when EPA published the list of facilities to be exempted on its website.[4] EPA's Annex I list was then appended to the Exemption Proclamation for publication in the Federal Register a week later. 90 Fed. Reg. at 16,779-84.

Two months later, on June 11, 2025, EPA signed a notice of proposed rulemaking that proposed to repeal the new fPM standard, the new mercury standard, and the CEMS requirements of the 2024 Rule, and solicited public comment. 90 Fed. Reg. at 25,535. EPA did not propose to repeal the 2024 Rule's startup standard, which is presently in effect. *Id.* at 25,535, 25,539 n.6 (explaining that "EPA is not reconsidering this aspect of the 2024 Final Action").[5]

Petitioners filed this lawsuit on June 12, 2025, challenging EPA's promulgation of the Annex I list of exempt sources.

## STANDARD OF REVIEW

Courts have discretion to stay a case to promote efficient use of the court's and litigants' resources, after weighing the benefits and hardships of a stay. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 259 (1936). But if there is even "a fair possibility" that the stay "will work damage to some one else," the movant must

---

[4] *Available at* https://www.epa.gov/system/files/documents/2025-04/regulatory-relief-for-certain-stationary-annex-1.pdf.

[5] The President also issued a second Proclamation on July 17, 2025, directly exempting an additional three coal plants. 90 Fed. Reg. 34,583 (July 23, 2025).

"make out a clear case of hardship or inequity in being required to go forward."

*Landis*, 299 U.S. at 255-56 (explaining that "the burden of making out the justice and wisdom" of a stay "lay heavily" on the movant). Thus, the movant must either show that (1) the movant's harms meet the heightened "clear case of hardship or inequity" standard, or (2) the opposing party's claims of hardship are non-existent.

A court is not compelled to stay a live controversy simply because it may become moot in the future. *See Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009). "A case is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Samma v. Dep't of Def.*, 136 F.4th 1108, 1113 (D.C. Cir. 2025) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Mootness arises only if there is nothing for the court to remedy. *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

## ARGUMENT

### I.  An Abeyance Would Harm Petitioners Whereas Respondents Fail To Show a Clear Case of Hardship.

Petitioners and their members are being exposed to pollution from exempted coal plants now. By challenging EPA's selection of facilities subject to the President's Exemption Proclamation, this suit seeks to ensure those plants are taking steps *now* to comply with the standards that will alleviate those exposures.

The requested six-month abeyance would prejudice Petitioners' ability to get prompt, meaningful judicial review of the list of facilities selected for exemption,

and thus to restore compliance obligations at plants that were unlawfully exempted. By contrast, Respondents identify no hardship from allowing the case to proceed—at least until Petitioners can be assured they have a suitable forum for their claims—other than the litigation costs necessary to defend their own unlawful actions. The balance of these interests strongly favors Petitioners, and Respondents therefore fail to meet their burden to stay this case at this time. *Landis*, 299 U.S. at 255-56.

Petitioners are environmental and public health organizations with members who live, work, and recreate in areas affected by the mercury, arsenic, and other metals pollution emitted by exempted coal plants. Petitioners' members are concerned that exposure to pollution from exempted plants, including from eating contaminated fish, could have harmful impacts on their health. These concerns also reduce members' enjoyment of outdoor activities in affected areas.

The 2024 Rule will achieve significant reductions in emissions of mercury, arsenic, and other metals each year from coal plants. 89 Fed. Reg. at 38,561. Those emissions reductions—and the steps necessary to secure them—have been occurring since the 2024 Rule took effect and continue apace, as plants take steps to prepare for full compliance by the 2027 deadline. Indeed, states that challenged the 2024 Rule asserted in court filings that "to comply with the Rule's three-year deadline . . . power plants need to take action immediately." *North Dakota v. EPA*,

Case No. 24-1119, ECF 2058570 at 1. Industry parties have also asserted that these years before the 2024 Rule compliance deadlines are necessary for sources to prepare for compliance. *See, e.g.*, Nat'l Mining Ass'n, Comments on the proposed MATS Rule, 88 Fed. Reg. 24,854, at 12 (June 23, 2023), *available at* https://www.regulations.gov/comment/EPA-HQ-OAR-2018-0794-5986. Plants already must comply with the more stringent startup standard, which had a January 2025 compliance deadline. 89 Fed. Reg. at 38,519, 38,564.

At the latest, the emission reductions required by the 2024 Rule must be achieved by the 2027 deadline. But not so for exempted coal plants. Under the terms of the Exemption Proclamations, no emission reductions will be required between 2027 and 2029. Despite the Clean Air Act's limitation of such exemptions to a two-year period, coal plants have *already* stopped working to reduce their emissions or better control their pollution during the present compliance period (as, indeed, the Administration intended): prospective Respondent-Intervenor Talen, an operator and co-owner of an exempted coal plant, stated that the 2024 Rule's compliance deadline "would require substantial and immediate expenditures" but that it has "suspended" compliance activities necessary to meet that deadline "[i]n reliance on the Presidential Exemption." Mot. to Intervene at 3. And others have almost certainly followed suit.

A facility's inclusion on the Annex I list thus delays the benefits of the reductions in emissions from exempted plants' compliance with the 2024 Rule, and prolongs members' exposure to pollution at present, higher levels. It also delays the benefits of continuous emissions monitoring systems, denying Petitioners and Petitioners' members information about coal plant emissions.

Those consequences flow from Annex I's selection of exempted facilities, not from EPA's proposed reconsideration of the 2024 Rule—which did not and could not exempt facilities from compliance with the Rule while it remains good law. The present operation of those exemptions is thus denying Petitioners' members and the public the benefits that would accrue in the absence of those exemptions: both the present-day emission reductions from the startup standard and the present and future emission reductions from sources upgrading or installing emissions controls to comply with the 2024 Rule that is presently in force. Indeed, because EPA, state regulators, and exempted coal plants have asserted that certain coal plants must begin preparations *immediately* to be able to meet standards by 2027, delay in resolving this case could mean compliance by 2027 is not possible, even if the Court ultimately finds it is legally required.[6] *See* Mot. to Intervene at 3

---

[6] Because exemptions may be extended after the two-year period expires, Petitioners' members and the public face the prospect of damage to their health and recreational interests for years to come. 42 U.S.C. § 7412(i)(4) ("An exemption . . . may be extended for 1 or more additional periods, each period not to exceed 2 years.").

(stating that meeting the 2024 Rule's deadline "would require substantial and immediate expenditures"); *see also* 89 Fed. Reg. at 38,519; *North Dakota v. EPA*, ECF 2058570 at 1, 18. Delaying judicial review would thus delay the cleaner air and better health that flows from lower emissions—and to which Petitioners and their members are legally entitled.

For these reasons, Petitioners must be assured of timely judicial review. Under Respondents' proposed six-month delay—which they have requested both in this case and in the parallel district court case—Petitioners face the "fair possibility" of securing relief too late for exempted plants to achieve compliance by 2027. *Landis*, 299 U.S. at 255. That outcome would "work damage" to Petitioners' members, who will be exposed to more mercury and toxic metal pollution from exempted coal plants—pollution that Petitioners seek to reduce by having the exemptions declared unlawful. *Id.* For the same reason Respondents issued the exemptions well in advance of the 2024 Rule's deadlines, Petitioners have a strong interest in resolving the question of their lawfulness well in advance of the deadlines: the exemptions affect present decisions about the timing of emission reductions.

As Petitioners have discussed with Respondents, abeyance of this petition *may* be appropriate in the future, if it becomes clear that district court challenges to the associated Exemption Proclamation are proceeding in a timely enough fashion

to secure the necessary relief. But Respondents have failed to carry their burden of showing a "clear case of hardship or inequity" in being required to go forward without an abeyance, at least until that time. *Id.* at 255-56 ("the burden of making" the case for a stay "lay heavily" on the movants). They assert only that abeyance would "promote judicial economy." Abeyance Mot. at 4. Such an interest falls short of meeting the heightened standard of a "clear case of hardship or inequity," *Landis*, 299 U.S. at 255-56; *see Lockyer v. Miran Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005), and is outweighed by Petitioners' interests in protecting the health of their members and the public from unlawful pollution.

That is especially true where the action concerns exemptions that the law does not compel (or, indeed, allow, *see* Complaint, *Air Alliance Houston v. Trump*, Case No. 1:25-cv-1852-PLF (filed June 12, 2025) (asserting that the Exemption Proclamation is *ultra vires*)). It would be inequitable for Respondents to evade timely judicial review of the exemptions they chose to issue, merely because they chose also to reconsider aspects of the 2024 Rule. The Clean Air Act, furthermore, expressly limits EPA's ability to stay the effectiveness of a rule during reconsideration "for a period not to exceed three months." 42 U.S.C. § 7607(d)(7)(B). Respondents should not be permitted to use the court to achieve a back-door stay pending reconsideration for exempted facilities.

Moreover, Respondents cannot reasonably claim that their chosen timing obviates any harm from the exemptions; Respondents chose to exempt a large group of facilities and pursue repeal of the 2024 Rule at the same time, and presumably would not have done so unless they believed the exemptions had their own, present impact. *Landis*, 299 U.S. at 255-56.

## II.     Respondents' claim that agency action may, in the future, moot this case does not justify abeyance.

Petitioners' challenge to the legality of Annex I presents a live controversy that can be meaningfully remedied and is therefore not moot. *See Samma*, 136 F.4th at 1113 ("A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (internal quotation omitted)). As explained above, Annex I is final and in effect—as is the 2024 Rule—and guides the activities regulated coal plants are taking (or not taking) right now. As described in Section I above, harm to Petitioners and their members from postponing emissions reductions is ongoing and will only increase as the 2027 deadline grows closer and compliance steps remain unfinished.

That a potential final action by EPA to rescind the 2024 rule "could" moot this case, as Respondents argue, is not sufficient grounds to put the case in abeyance. Where harm is ongoing, timely review is of the essence, and judicial relief would be effective, the Court is not obligated to step aside even where a case might become moot shortly. *See Crawford v. FCC,* 417 F.3d 1289, 1294-95 (D.C.

Cir. 2005) (deciding case where FCC action would effectively moot the claim, but that action had not yet become final); *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 53 n.15 (1980) (concluding that because challenged state statutes "remain in effect," "the case has not become moot, whatever the ultimate disposition" of pending bills to amend them).[7]

As an initial matter, even if EPA adopts its proposal, it could not entirely moot this case: the 2024 Rule consists of several distinct standards and requirements, and EPA does not propose to repeal or modify *all* of them. For instance, EPA stated that it is "not reconsidering" the more stringent startup standard. 90 Fed. Reg. at 25,535, 25,539 n.6. The Exemption Proclamation, on the other hand, exempts Annex I power plants "from compliance with the Rule," which seemingly includes the 2024 Rule's startup standard. 90 Fed. Reg. 16,777 (Apr. 21, 2025). Thus, the validity of the exemptions effectuated by Annex I would remain a live controversy even if the rule is finalized as proposed.

---

[7] Other circuits have concluded the same. *See, e.g.*, *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (declining to "dismiss a live controversy as moot merely because it may become moot in the near future"); *Muniz v. Sabol,* 517 F.3d 29, 34 (1st Cir. 2008) (controversy "clearly not moot" even where the requested relief would have occurred within a few weeks regardless of the case's outcome); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 530 n.5 (6th Cir. 2007) (deciding case where superseding legislation would inevitably moot controversy, but law did not take effect for another month).

In any event, any mootness assessment is premature under the circumstances: We know neither *what* action EPA will take on its proposal, nor *when* it will take it. EPA has only *proposed* to repeal aspects of the 2024 Rule; it must now consider and respond to public comments on that proposal. *See* 42 U.S.C. § 7607(d)(5), (6)(B). The Clean Air Act and Administrative Procedure Act require that EPA's rulemakings be based on consideration of law, data, factual findings, and reasoned decision-making, and reflect input from the public. 42 U.S.C. § 7607(d); 5 U.S.C. § 553. These requirements "ensure that agency regulations are tested via exposure to diverse public comment," and provide "notice and the opportunity to be heard" as an essential component of "fairness to affected parties." *Int'l Union, UMW v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005) (cleaned up) (citing *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 547 (D.C. Cir. 1983)).

So, although EPA *could* finalize the action as proposed at the conclusion of the notice and comment process, it runs counter to the core principles of agency responsiveness to the public and regulated community to presume the Agency will. EPA also might issue an action with "major changes" from the proposal—which may not ultimately moot the present controversy. *See* 42 U.S.C. § 7607(d)(6)(A). Indeed, because Annex I serves to exempt the listed coal plants "from compliance with the Rule," 90 Fed. Reg. at 16,777, leaving even a single requirement of the

2024 Rule in place keeps the issues presented in this case "live" and capable of being remedied. *Larsen v. U.S. Navy*, 525 F.3d 1, 3-4 (D.C. Cir. 2008). EPA could also decide to modify its approach and issue a new proposal,[8] or to rescind the proposal altogether. The Court should not stay this case on the mere possibility the 2024 Rule will be repealed as proposed.

We also do not know *when* EPA will take final action on its proposal. Respondents characterize EPA's intention to promulgate a final rule by December 2025 as a "goal," and it is just that. *See* Abeyance Mot. at 4. EPA is not subject to any legal requirement to act by December 2025 or any other date. A nonbinding statement located on a website expressing EPA's intent to act before the end of the year is not sufficiently concrete to warrant abeyance. *See Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 389 (D.C. Cir. 2012) (emphasizing that a settlement required EPA to issue a final rule by a "definite end date"). Indeed, the D.C. Circuit has cautioned that agencies cannot "stave off judicial review of a challenged rule simply by

---

[8] In fact, EPA requested comment on alternative standards that the Agency should consider in lieu of repealing the 2024 Rule fPM and mercury standards. 90 Fed. Reg. at 25,544-45 (June 17, 2025). Petitioners are among thousands of commenters on EPA's proposed repeal, and commented, among other things, that there *are* cost-effective intermediate standards. *See, e.g.*, Air Alliance Houston et al., Comments of Public Health and Environmental Organizations on Proposed Rule on National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Unit (June 17, 2025), EPA-HQ-OAR-2018-0794-7609, available at: https://www.regulations.gov/comment/EPA-HQ-OAR-2018-0794-7609.

initiating a new proposed rulemaking that would amend the rule in a significant way." *Id*. at 388.

In any event, if history is any guide, final action is far from imminent. December 2025 is an ambitious goal. In practice, it can take EPA a year or longer to finalize action after the notice of proposed rulemaking.[9] Indeed, the Agency's last three MATS rulemakings each took more than a year between proposed and final action. *See, e.g.*, 89 Fed. Reg. at 38,509 (notice of proposed rulemaking published on April 24, 2023; final rule published on May 7, 2024); 88 Fed. Reg. 13,956 (Mar. 6, 2023) (proposed rule published February 9, 2022); 85 Fed. Reg. 31,286, 31,286-87 (May 22, 2020) (proposed rule published February 7, 2019). Especially in an area of great complexity and public interest, there is reason to doubt that EPA will be able to respond to those comments and finalize a rule in half its typical time.

---

[9] EPA has asserted as much in signed declarations concerning other rules issued under Section 7412. *See, e.g.*, Decl. of Penny E. Lassiter ¶ 4 & tbl., rows 8-10, *Blue Ridge Envtl. Def. League v. Regan*, No. 1:22-cv-03134, ECF No. 36 (D.D.C. Nov. 4, 2024) (stating that the "earliest possible completion date" for a Clean Air Act Section 7412 rulemaking on hazardous waste combustors was 10 months from proposal to final rule); Decl. of Panagiotis E. Tsirigotis ¶ 16 tbl. 3, row 4, ¶¶ 22-24, *Sierra Club v. Pruitt*, No. 1:16-cv-02461-TJK, ECF No. 13-3 (D.D.C. Oct. 19, 2017) (identifying the "minimum number of days" for a Clean Air Act Section 7412 technology review rulemaking on solid waste incinerators as one year from proposal to final rule).

In contrast, should near-term proceedings in the district court demonstrate that litigation in this Court is necessary to protect Petitioners' interests, the present, unlawful and irreparable emission of dangerous pollutants from the Annex I facilities would warrant expedited consideration of this petition. *See* D.C. Cir. Handbook VIII.B. Considering the likelihood of delay in meeting the December 2025 "goal," this Court could be positioned to grant relief before EPA takes final action. Even if Petitioners were to finalize a repeal rule before the Court concluded expedited consideration of this petition, such a repeal might not go into effect before the Court ruled here because any repeal rule may be stayed pending its own course of judicial review. In those circumstances, definitive rejection of EPA's selection of Annex I facilities would still secure important relief for Petitioners.

Finally, proceeding with this litigation while EPA's rulemaking proceeds does not present the concerns identified in *American Petroleum Institute v. EPA*, 683 F.3d 382 (D.C. Cir. 2012), and the other authorities Respondents cite in support of abeyance. Those cases arose in the context of an agency's reconsideration of the very rules being challenged in the litigation they sought to abate. *See, e.g.*, *id*. at 386-88. Here, by contrast, EPA seeks abeyance of litigation challenging Annex I on the basis that it is reconsidering an independent agency action, the 2024 Rule. But neither Annex I nor the exemptions themselves are being reconsidered and neither will be terminated by whatever action EPA decides

to take on the 2024 Rule. As such, the Court is not being asked to review an action that is itself "tentative" or subject to change or "eliminat[ion]." *Id.* at 387-88. And this is not a matter where, as in *Center for Biological Diversity v. EPA*, 56 F.4th 55, 60-61 (D.C. Cir. 2022), *see* Abeyance Mot. at 4, the parties reached a private settlement and jointly requested abeyance to allow time for the settlement's implementation.

## CONCLUSION

For the reasons stated above, abeyance in this case is, at a minimum, premature, and could bring about substantial harm. The Court should deny Respondents' motion for a six-month abeyance.

DATED:  August 19, 2025             Respectfully submitted,

/s/ *Chloe H. Kolman*
Sean H. Donahue
Chloe H. Kolman
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, DC 20003
Tel: (202) 277-7085
sean@donahuegoldberg.com
chloe@donahuegoldberg.com

Surbhi Sarang
Richard Yates
Tomás Carbonell
Environmental Defense Fund
2060 Broadway St., Ste. 300
Boulder, Colorado 80302
Tel: (303) 440-4901
ssarang@edf.org

ryates@edf.org
tcarbonell@edf.org

*Counsel for Petitioner Environmental Defense Fund*

Nicholas Morales
James Pew
Earthjustice
1001 G Street NW, Suite 1000
Washington, DC 20001
Tel: (202) 667-4500
nmorales@earthjustice.org
jpew@earthjustice.org

*Counsel for Petitioners Air Alliance Houston, Clean Air Council, Downwinders at Risk, Montana Environmental Information Center, and Sierra Club*

Abel Russ
Environmental Integrity Project
888 17th St. NW, Suite 810
Washington, DC 20006
(202) 296-8800
aruss@environmentalintegrity.org

*Counsel for Petitioner Environmental Integrity Project*

Sarah Buckley (D.C. Cir. Bar No. 56677)
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
(202) 836-9555
sbuckley@nrdc.org

Katherine Desormeau (D.C. Cir. Bar No. 53097)
Natural Resources Defense Council

111 Sutter Street, 21st Floor
San Francisco, California 94104
(415) 875-6100
kdesormeau@nrdc.org

*Counsel for Petitioner Natural Resources Defense Council*

Brian H. Lynk (D.C. Bar No. 459525)
Environmental Law & Policy Center
740 15th Street, NW, Suite 700
Washington, DC 20005
(240) 461-4241
blynk@elpc.org

*Counsel for Petitioners Environmental Law & Policy Center and Dakota Resource Council*

Shaun A. Goho
Hayden Hashimoto
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
617-624-0234
sgoho@catf.us

*Counsel for Petitioner Citizens for Pennsylvania's Future*

Ryan Maher
Center for Biological Diversity
1411 K Street, NW, Suite 1300
Washington, DC 20005
(781) 325-6303
rmaher@biologicaldiversity.org

*Counsel for Petitioner Center for Biological Diversity*

## CERTIFICATE OF COMPLIANCE

I hereby certify on this 19th day of August, 2025, that the foregoing Response in Opposition complies with the word limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,563 words, excluding parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) & (6) because this document has been prepared in 14-point Time New Roman font, a proportionally spaced typeface, using Microsoft Word.

/s/ *Chloe H. Kolman*
Chloe H. Kolman

## CERTIFICATE OF SERVICE

I hereby certify on this 19th day of August, 2025, that the foregoing Response in Opposition has been filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit, using the CM/ECF System. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *Chloe H. Kolman*
Chloe H. Kolman